UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN S. PETERO,                                    Case No. 16-11389

        Plaintiff,                              Hon. Nancy G. Edmunds
v.                                                  United States District Judge

CAROLYN W. COLVIN,                                  Stephanie Dawkins Davis
                                                    United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 15)**

**I.     PROCEDURAL HISTORY**

    A.     Proceedings in this Court

On April 18, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing her claims for Disability Widow's

Benefits ("DWB") under Sections 216(i), 223 of the Social Security Act. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District

Judge Nancy G. Edmunds referred this matter to the undersigned magistrate judge

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claims. (Dkt. 4). On July 22, 2016, plaintiff filed a motion for summary

judgment. (Dkt. 14). On August 15, 2016, the Commissioner filed a motion for

summary judgment. (Dkt. 15). Plaintiff filed a reply on September 2, 2016. (Dkt.

16).  The matter is now ready for report and recommendation.

B.    Administrative Proceedings

On May 22, 2013, plaintiff protectively filed an application for Disabled

Widow's Benefits, alleging disability beginning June 1, 2012.  (Dkt. 12-5, Pg ID

176-185).  The Commissioner initially denied plaintiff's disability application on

October 1, 2013.  (Dkt. 12-3, Pg ID 113-124).  Thereafter, plaintiff requested an

administrative hearing, and on January 12, 2015, she appeared with counsel before

Administrative Law Judge ("ALJ") Patricia S. McKay, who considered her case *de

novo*.  (Dkt. 12-2, Pg ID 64-111).  In a March 27, 2015 decision, the ALJ

determined that plaintiff was not disabled within the meaning of the Social

Security Act.  *Id*. at Pg ID 46-60.  The ALJ's decision became the final decision of

the Commissioner on February 23, 2016 when the Social Security

Administration's Appeals Council denied plaintiff's request for review.  *Id*. at Pg

ID 36-40.

For the reasons set forth below, the undersigned recommends that the court

**DENY** plaintiff's motion for summary judgment, **GRANT** the defendant's motion

for summary judgment, and **AFFIRM** the findings of the Commissioner.

## II.    FACTUAL BACKGROUND

Plaintiff is presently 59 years of age and was 55 years of age at the alleged

disability onset date.  (Dkt. 12-2, Pg ID 78).  Plaintiff has a high school education

and has past work experience as a housekeeper, which the vocational expert

identified as unskilled work of the light exertional level, both as generally and

actually performed; machine operator, unskilled work of the light exertional level

as it is generally performed, and of the medium exertional level as the claimant

performed it; and as a janitor, unskilled work of the medium exertional level, both

as it is generally performed and as it is actually performed. *Id.* at 58. The

prescribed period ends on October 31, 2016. *Id.* at 48.

A. ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since June 1, 2012, the alleged onset date. (Dkt. 12-2, Pg ID 48). At step two, the

ALJ found that plaintiff had the following severe impairments: degenerative disc

disease of the lumbar spine; coronary artery disease, with dyspnea on exertion, and

thyroid disorder (20 CFR 404.1520(c)). *Id.* At step three, the ALJ found that

plaintiff did not have an impairment or combination of impairments that met or

equaled one of the listings in the regulations. *Id.* at Pg ID 52. The ALJ

determined that plaintiff has the following residual functional capacity:

> to perform light work as defined in 20 CFR 404.1567(b)
> except: she is able to occasionally climb stairs, crouch,
> crawl, kneel, stoop/bend, and she must avoid workplace
> hazards, such as moving machinery, unprotected heights,
> and climbing of ladders, ropes, or scaffolds.

*Id.*[1]  At step four, the ALJ determined that plaintiff is capable of performing past relevant work as a housekeeper.  *Id.* at Pg ID 58.  The ALJ specifically concluded that this work does not require the performance of work-related activities precluded by the plaintiff's RFC.  *Id.*  As such, the ALJ concluded that plaintiff has not been under a disability from the alleged onset date through the date of her decision.  *Id.* at Pg ID 59.

B.    Plaintiff's Claims of Error

Plaintiff first argues that the ALJ made an erroneous step five determination that is unsupported by the substantial weight of the evidence.[2]  (Dkt. 14, Pg ID 374).  Specifically, plaintiff says that the RFC assessment does not include all of plaintiff's limitations and therefore the ALJ erroneously determined that plaintiff could perform her past work.  Plaintiff points to Dr. Agrawal's physical RFC questionnaire wherein he indicated that plaintiff had significant limitations with reaching, handling, and fingering secondary to only 10% useful ability in her

---

[1]  Light work is defined as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 CFR § 404.1567

[2]  In this argument, plaintiff says that the ALJ erred at both step four and step five; however, because the ALJ determined that plaintiff could perform her past relevant work, the ALJ's analysis ended at step four.  The court assumes, therefore, that plaintiff is making a step four argument.

bilateral upper extremities. Plaintiff also testified that she could not hold or squeeze things, and that even lifting five pounds aggravates her back. Despite this evidence, plaintiff contends that the ALJ did not incorporate a reaching, handling, or fingering limitation in her RFC assessment. This, according to plaintiff, led to an erroneous conclusion at step four that plaintiff could perform her past work as a housekeeper. Furthermore, the failure of the ALJ to create an accurate hypothetical that incorporated plaintiff's limitations is reversible error entitling plaintiff to an immediate award of benefits.

Plaintiff also argues that the ALJ violated the procedural aspect of the treating physician rule in evaluating the medical source opinion of Dr. Agrawal. (Dkt. 14, Pg ID 376). Plaintiff says that the ALJ assigned little weight to Dr. Agrawal's opinion because it is entirely inconsistent with the totality of the evidence, including treatment history, medication use, and activities of daily living. However, according to plaintiff, the ALJ does not provide the necessary "good reasons" contemplated by SSR 96-2p, particularly because it ignores substantial evidence to the contrary—including a comprehensive analysis of plaintiff's daily activities and an overview of the objective medical evidence.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner first argues that the ALJ properly discounted Dr. Agrawal's RFC assessment. (Dkt. 15, Pg ID 391). The ALJ afforded Dr.

Agrawal's opinion "little weight" because it was conclusory, provided very little support or explanation for the limitations it imposed, and was inconsistent with the record as a whole including Dr. Agrawal's own treatment notes, other medical evidence, and plaintiff's activities of daily living. Moreover, the fact that plaintiff may identify evidence that could support a contrary finding is not a sufficient reason to reverse the Commissioner's decision. *See Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) ("When the Commissioner's decision is supported by substantial evidence, we defer to it, even if 'substantial evidence in the record . . . would have supported an opposite conclusion.'") (internal citations omitted).

The Commissioner secondarily argues that substantial evidence supports the ALJ's RFC assessment. (Dkt. 15, Pg ID 400). In this regard, plaintiff's argument fails from the outset because she has not established that she has a medically determinable hand impairment. Indeed, at Step Two of the sequential evaluation, the ALJ determined that plaintiff's polyarthralgia and arthritis were not medically determinable impairments, and plaintiff has not challenged that finding. (Dkt. 12-2, Pg ID 51). That alone scuttles plaintiff's argument because when assessing her RFC, the ALJ may only consider medically determinable impairments. *See White v. Colvin*, 2015 WL 5210243, at *7 (E.D. Mich. Sept. 3, 2015); SSR 96-8p, 1996 WL 374184, at *1. Relatedly, the Commissioner contends that all of the evidence

upon which plaintiff relies constitute symptoms, but a symptom is not a medically determinable impairment and "no symptom by itself can establish the existence of such an impairment." SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996). Even setting aside that plaintiff did not present evidence of a medically determinable hand impairment, the Commissioner argues that the ALJ considered all evidence and determined that it did not support additional hand limitations to the RFC.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the

ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for

the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247

(6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)

(an "ALJ is not required to accept a claimant's subjective complaints and may . . .

consider the credibility of a claimant when making a determination of disability.");

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's

credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and

credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting

credibility to a certain degree is appropriate where an ALJ finds contradictions

among medical reports, claimant's testimony, and other evidence."). "However,

the ALJ is not free to make credibility determinations based solely upon an

'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486

F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact

are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky*, 167 Fed. Appx., at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted) (*see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be

determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Treating Physician Opinion

Plaintiff argues that the ALJ violated the procedural aspect of the treating

physician rule in evaluating the medical source statement of Dr. Agrawal.

Specifically, the plaintiff says that the ALJ failed to give the necessary good

reasons for assigning "little weight" to Dr. Agrawal's opinion.

In this regard, the ALJ stated:

> The undersigned considered the opinion of her treating
> source, Dr. Agrawal, who indicated that the claimant
> would be off-task more than 25 percent of the day, would
> be absent more than 4 days per month, and would be
> incapable of even "low stress" jobs (Exhibit 8F). Dr.
> Agrawal noted that she would be unable to sit and stand
> more than five minutes and could "never" carry anything
> under 10 pounds. *Id.*  Despite her representative's
> arguments, the undersigned accords little weight to his
> opinion because it is entirely inconsistent with the
> totality of the evidence, including her treatment history,
> her medication use, and her activities of daily living,
> which renders his opinion less persuasive.  His opinion is
> quite conclusory, as he provided very little explanation
> of the evidence relied on in forming his opinion.
> Remarkably, his own reports fail to reveal the *type* of
> significant clinical and laboratory abnormalities one
> would expect if the claimant were in fact as extremely
> limited as Dr. Agrawal indicated, and the doctor did not
> specifically address this weakness. As discussed herein,
> he consistently noted that the claimant had no

neurological deficits, was alert, oriented to person, place, and time, and consistently had full range of motion (Exhibits 4F and 11F). This is also consistent with the observations of her other treating and examining sources, including Dr. Boneff and Dr. Rubin, as discussed herein.

(Dkt. 12-2, Pg ID 57-58).

The Sixth Circuit has emphasized that greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). The opinion of a treating physician is the subject of a special rule: such an opinion must be given controlling weight if it is well-supported and not inconsistent with the record, and even if it is not given controlling weight, it is subject to a rebuttable presumption of deference. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Massey v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 917, 921 (6th Cir. 2011) ("[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"). The ALJ, however, "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001). Moreover, an opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) (a physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Rogers*, 486 F.3d at 406 (citing § 404.1527(d)(2)). Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used." As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-56 (6th Cir. 2004) (finding the ALJ's failure to make sufficiently clear why he rejected the treating physician's opinion was not harmless error, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the

findings and conclusions he makes." *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the medical opinion is determined by a set of factors that guides the weight given to the medical opinion, including the treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 372 (6th Cir. 2006).

For the reasons that follow, the undersigned suggests that the ALJ gave "good reasons" for affording less weight to Dr. Agrawal's opinion. The ALJ noted that Dr. Agrawal's opinion was "entirely inconsistent with the totality of the evidence, including [plaintiff's] treatment history, her medication use, and her activities of daily living, which renders his opinion less persuasive." (Dkt. 12-2, Pg ID 57). The ALJ also noted that Dr. Agrawal's "opinion is quite conclusory, as he provided very little explanation of the evidence relied on in forming his opinion." *Id*. As noted by the Commissioner, this was likely so because Dr. Agrawal's opinion consisted of a "check-the-box" form. (Dkt. 12-7, Pg ID 335-

338).  The physical residual functional capacity questionnaire completed by Dr.

Agrawal invited him to attach "all relevant treatment notes, radiologist reports,

laboratory and test results that have not been provided previously to the Social

Security Administration."  *Id.* at 335.  Despite this invitation, Dr. Agrawal did not

provide any explanation for the significant limitations he provided on the form.

While plaintiff has provided examples of evidence she states *could* support Dr.

Agrawal's restrictive limitations, as discussed *infra*, there appears to be no

objective or diagnostic evaluations to support Dr. Agrawal's significant findings.

For example, plaintiff cites to objective medical evidence in this case including a

November 5, 2012 lumbar spine x-ray that is significant for bilateral

spondylolysis, anterolisthesis of L5-S1, disc space narrowing, and a severe

compression deformity.  (Dkt. 12-7, Pg ID 320).  However, Dr, Agrawal did not

cite to these lumbar spine x-ray findings, or to any other specific objective

findings, as the basis for his opinion.  Further, as discussed more fully below, the

record establishes that plaintiff only received minimal health treatment before her

last day insured, and the treatment received was relatively successful in controlling

plaintiff's symptoms.

    Courts have increasingly questioned the evidentiary value of "multiple

choice" opinion forms (like the one completed by Dr. Agrawal) which are not

supported by clinical records.  As one court observed:

It does not appear that the Sixth Circuit has directly addressed the weight afforded to check-box forms filled out by treating physicians; however, other circuit courts and courts within the Sixth Circuit have cast doubt on the usefulness of such "checkmark" or "multiple choice" forms when unaccompanied by explanation or unsupported by physician's notes. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records."); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's discounting of a treating physician's opinion in a checklist form because "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065-66 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . where these so called reports are unaccompanied by thorough written reports, their reliability is suspect.") (internal quotations and citation omitted); *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *18 (E.D. Mich. Feb. 10, 2012) ("Dr. Ulano merely checked off boxes on the form to indicate that [claimant] satisfied the requirements for listing § 12.05 'personality disorder' and almost satisfied the listing for § 12.04 'affective disorder' . . . [but] did not support any of these findings with any evidence in her treating record or any new observations from more recent treatments."); *Ahee v. Comm'r of Soc. Sec.*, No. 07-CV-12071, 2008 WL 4377652, at *4 (E.D. Mich. Sept. 22, 2008) ("The ALJ has discretion to reject a medical opinion, here a form, when the opinion is not supported by objective medical evidence.").

*Lane v. Comm'r of Soc. Sec.*, 2013 WL 5428739, at *9 (W.D. Mich. Sept. 26, 2013) (quoting *Doyle v. Comm'r of Soc. Sec.*, 2012 WL 4829434, at *9 (E.D.

Tenn. Sept. 12, 2012), *adopted by* 2012 WL 4829213 (E.D. Tenn. Oct. 10, 2012));

*see also Ashley v. Comm'r of Soc. Sec.*, 2014 WL 1052357, at *8 n.6 (W.D. Mich.

Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of

'multiple choice' or 'check-off' opinion forms complet[ed] by treating physicians

which are not []supported by clinical records[.]") (citing *Doyle, supra*); *Hyson v.*

*Comm'r of Soc. Sec.*, 2013 WL 2456378, at *13 (N.D. Ohio June 5, 2013)

(collecting cases which held the ALJ did not err by discounting a physician's

opinion which used a checkbox form unaccompanied by explanation of her

conclusions).  As the Sixth Circuit has previously held, it is not improper for the

ALJ to consider whether a physician has identified objective medical findings to

support a medical opinion.  *See Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172,

176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical

findings to support his opinion regarding Price's impairments, the ALJ did not err

in discounting his opinion."); *see also Teague v. Astrue*, 638 F.3d 611, 615-16

(8th Cir. 2011) (the ALJ could properly give little evidentiary weight to a treating

physician's "checkoff form" of functional limitations which "did not cite clinical

test results, observations or other objective findings").  Absent Dr. Agrawal

providing some explanation for the various severe restrictions which appear on the

physical RFC questionnaire check-box form, there is no basis for the ALJ (or for

this court) to determine a medical basis for those restrictions.  As noted

previously, it is plaintiff's burden to provide that she suffers from a disabling condition. Thus, the undersigned concludes that the ALJ could properly discount Dr. Agrawal's opinion as weak evidence which did not cite supporting objective medical evidence. *See Lane*, 2013 WL 5428739, at *9 (ALJ properly rejected treating physician's multiple choice opinion form as weak evidence).

The ALJ also discounted Dr. Agrawal's opinion because it was inconsistent with the record as a whole including his own treatment notes, other medical evidence, and plaintiff's activities of daily living. (Dkt. 12-2, Pg ID 57). As noted by the Commissioner, this is also a valid reason for the ALJ to discount a physician's opinion. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ pointed out that Dr. Agrawal noted that plaintiff had no neurological deficits, was alert and fully oriented, and had full range of motion. (Dkt. 12-2, Pg ID 57-58; Dkt. 12-7, Pg 268-280, 349-351, 353, 355-356). Dr. Agrawal's treatment notes also reflected only routine treatment. (Dkt. 12-2, Pg ID 57; Dkt. 12-7, Pg ID 268-280, 286-317, 349-351, 353, 355-356). While Dr. Agrawal indicated that plaintiff complained of low back pain, his treatment notes also indicated that plaintiff's pain was conservatively controlled for a long period with over the counter medication. (Dkt. 12-2, Pg ID 57, 353). With respect to plaintiff's ability to reach, finger, and grasp, it appears that Dr. Agrawal initially

noted "hand tenderness" on June 19, 2014. (Dkt. 12-7, Pg ID 338, 353). Also on June 19, 2014, Dr. Agrawal does not document any hand impairment, or even note that plaintiff had complained of any hand pain or impairment. (Dkt. 12-7, Pg ID 313). It was not until three months later, in September 2014, that plaintiff first complained of numbness in the first three fingers of her right hand. (Dkt. 12-7, Pg ID 351). But Dr. Agrawal's notes do not reflect any "hand tenderness" at this time. (*Id*.) As Dr. Agrawal's notes reflect largely routine and conservative treatment of plaintiff's impairments, the undersigned concludes that the ALJ did not err in discounting Dr. Agrawal's opinion as it was not consistent with the significant limitations he imposed in the RFC assessment.

The ALJ also determined that Dr. Agrawal's opinion was inconsistent with the other medical evidence of record. (Dkt. 12-2, Pg ID 58). For example, the state agency physician, Dr. Flores, opined that plaintiff was capable of a reduced range of light work. (Dkt. 12-2, Pg ID 58, 120-122). Specifically, Dr. Flores concluded that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds. *Id.* at 121. Further, Dr. Flores opined that plaintiff could stand and/or walk for a total of six hours in an 8-hour workday, and sit for a total of six hours in an 8-hour workday. *Id.* The agency physician also indicated that plaintiff did not have any manipulative limitations. *Id.* The ALJ also catalogued treatment notes from Drs. Smith and Issa regarding plaintiff's

alleged back pain. At most, the ALJ noted that these records showed "moderate" pain and characterized it as a "dull ache." (Dkt. 12-7, Pg ID 307). Testing on plaintiff's heart revealed some mild clinical findings, but were otherwise normal. *Id.* at Pg ID 339-340. Moreover, the ALJ explained that according to her physicians, plaintiff's pain was well controlled with medication. *Id.* at Pg ID 300, 304, 307, 309, 352. Based on this additional record evidence, the undersigned concludes that the ALJ reasonably determined that Dr. Agrawal's opinion was not consistent with the record as a whole.

Finally, the undersigned concludes that the ALJ did not err in discounting Dr. Agrawal's opinion based on plaintiff's self-reported activities of daily living. The ALJ noted that plaintiff reported that she had no difficulties attending to her personal care, including dressing, bathing, caring for her hair, shaving, feeding herself, and using the toilet, despite her alleged hand limitations. (Dkt. 12-2, Pg ID 55). She also reported to Dr. Boneff that she is able to shower and dress herself. Plaintiff also indicated that she tries to clean the house as much as she can sitting or lying down. She indicated that she washes dishes, does laundry, washes her floors using her hands and knees, performs household repairs, and prepares her own meals. According to the plaintiff, she is able to go shopping, attend church, use the computer, as well as pay her bills, count change, handle a savings account, and use a checkbook and money orders. She also related that she is able to walk

(sometimes more than a block without shortness of breath), drive a car, and ride a bicycle. As stated by the ALJ, this is consistent with Dr. Boneff's observation that plaintiff drove a car to the consultative examination. The plaintiff also related to Dr. Boneff that she moved to live with her adult, disabled daughter, which according to the ALJ "indicates that her daughter required additional specialized care and assistance, despite her age." (Dkt. 12-2, Pg ID 55). Plaintiff also related that she babysits her grandchildren. Plaintiff reported to Dr. Agrawal that she does not exercise because of her "busy schedule." (*Id*.; citing Dkt. 12-7, Pg ID 271).

The ALJ also observed plaintiff's presentation and demeanor during the hearing and concluded that it was not consistent with her alleged focus, concentration difficulties, medication side effects, and reported lack of sleep the night before the hearing. As the Commissioner observed, plaintiff has not challenged the ALJ's credibility determination; however, even if she had, the undersigned has reviewed that finding and concludes that it comports with SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

The undersigned concludes that substantial evidence supports the ALJ's decision to discount Dr. Agrawal's testimony here. Moreover, the fact that plaintiff has identified evidence that could support a contrary finding is not a sufficient basis to reverse the Commissioner's finding. *See Johnson v. Comm'r of*

*Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) ("When the Commissioner's decision is supported by substantial evidence, we defer to it, even if 'substantial evidence in the record . . . would have supported an opposite conclusion.'") (internal citations omitted).

### 2. RFC Assessment

Plaintiff next argues that the ALJ erred by not including limitations in the RFC with respect to her alleged inability to reach, handle, and finger. At Step Two of the sequential evaluation process, the ALJ considered plaintiff's alleged symptoms of polyarthralgia and arthritis; however, the ALJ determined that there was a lack of objective evidence to substantiate the existence of a medically determinable impairment. (Dkt. 12-2, Pg ID 51). Specifically, the ALJ noted that "[a] medically determinable impairment may not be established solely based on symptoms alone, or on the claimant's allegations regarding symptomology." (*Id.*, citing 20 CFR § 404.1508 and SSR 96-4p). Rather, there must be evidence from a medical source in order to establish the existence of a medically determinable impairment. *See* SSR 06-3p. According to the ALJ, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. Plaintiff has not challenged that finding here. As the Commissioner rightly points out, that alone scuttles plaintiff's argument because when assessing an RFC, an ALJ may only consider a claimant's medically determinable

impairments. *See White v. Colvin*, 2015 WL 5210243, at *7 (E.D. Mich. Sept. 3, 2015); SSR 96-8p, 1996 WL 374184, at *1. The undersigned agrees with the Commissioner that all of the evidence relied upon by plaintiff (e.g., reports of "hand tenderness" and "numbness and tingling" in her fingers) constitutes *symptoms* of an alleged hand impairment. *See* 20 C.F.R. § 404.1528(a) ("Symptoms are your own description of your physical or mental impairment"). But the regulations confirm that a symptom is not a medically determinable impairment and "no symptom by itself can establish the existence of such an impairment." SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996). Plaintiff has not identified any objective or diagnostic evidence that she has any medically determinable impairment related to her hands.

The undersigned also notes that while the evidence did not amount to a medically determinable hand impairment, the ALJ continued her assessment through the sequential evaluation to determine whether the evidence reasonably supported additional limitations to the RFC assessment. As mentioned above, the ALJ reasonably discounted Dr. Agrawal's check-box RFC assessment because it was not supported with objective evidence and was not consistent with the record as a whole. Though one treatment note refers to "hand tenderness" (Dkt. 12-7. Pg ID 353), there are no objective or diagnostic evaluations to confirm the existence of a hand impairment. Also noted above, Dr. Agrawal's opinion is internally

inconsistent with his own notes which consistently opined that plaintiff had full range of motion in her extremities. (Dkt. 12-7, Pg ID 268-280, 349-351, 356). The ALJ also reasonably discounted plaintiff's testimony–specifically based on her purported inability to use her hands. Finally, the ALJ pointed to the opinion of State agency physician Dr. Flores as supporting his RFC determination. Dr. Flores opined that plaintiff was capable of lifting 20 pounds occasionally and ten pounds frequently–limitations that are consistent with the ALJ's RFC assessment. Dr. Flores opined (like the ALJ's RFC assessment) that plaintiff had no manipulative limitations. (*Compare* Dkt. 12-2, Pg ID 52 with Dkt. 12-3, Pg ID 121).

For all of these reasons, the undersigned finds that the ALJ did not err by not including any limitations resulting from plaintiff's purported hand impairment.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned recommends that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 14, 2017                          s/Stephanie Dawkins Davis
                                               Stephanie Dawkins Davis
                                               United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>August 14, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov